1
2
3
4
5
6          UNITED STATES DISTRICT COURT
7          EASTERN DISTRICT OF WASHINGTON
8

9   JOSEPH SCHNEIDERMAN,          No. 2:14-CV-00120-JTR

10          Plaintiff,           ORDER GRANTING IN PART
                                  PLAINTIFF'S MOTION FOR
11          v.                    SUMMARY JUDGMENT
12

13  CAROLYN W. COLVIN,
    Commissioner of Social Security,
14

15          Defendant.
16

17      **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

18  Nos. 20, 21.  Attorney Dustin D. Deissner represents Joseph Schneiderman

19  (Plaintiff); Special Assistant United States Attorney Catherine Escobar represents

20  the Commissioner of Social Security (Defendant).  The parties have consented to

21  proceed before a magistrate judge.  ECF No. 17.  After reviewing the

22  administrative record and the briefs filed by the parties, the Court **GRANTS, in**

23  **part,** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Motion for

24  Summary Judgment, and **REMANDS** the matter to the Commissioner for

25  additional proceedings pursuant to 42 U.S.C. § 405(g).

26                          **JURISDICTION**

27      Plaintiff filed applications for Disability Insurance Benefits (DIB) and

28  Supplemental Security Income (SSI) on March 2, 2009, alleging disability

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 1

beginning January 23, 2002.  Tr. 165-71.  The applications were denied initially and upon reconsideration.  Tr. 117-23, 134-37.  Administrative Law Judge (ALJ) Marie Palachuk held a hearing on June 8, 2010, at which Plaintiff, represented by counsel, testified as did medical expert George W. Weilepp, M.D., and vocational expert (VE) Sharon Welter.  Tr. 49-104.  The ALJ issued an unfavorable decision on September 3, 2010.  Tr. 26-42.  The Appeals Council denied review.  Tr. 1-4. The ALJ's September 2010 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on April 29, 2014.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 40 years old at the time of the hearing.  Tr. 83.  Plaintiff obtained a GED and completed some college and trade school.  Tr. 83.  Plaintiff previously worked in the construction, concrete, and rain gutter installation industries.  Tr. 83, 222.  Plaintiff was also a professional bull rider from 1991 to 2001.  Tr. 93-94.

In January 2002, while driving a truck during the course of his job, Plaintiff's truck was blown off the road into an embankment.  Tr. 283.  Plaintiff opened a workers' compensation claim and underwent a significant amount of treatment, including physical therapy and multiple surgeries.  Plaintiff had cervical surgery (C4-5 anterior cervical discectomy and fusion) in September 2005, Tr. 294, 353-54, which initially helped his neck pain, Tr. 395.  Plaintiff testified, however, that two car accidents subsequent to the surgery increased his pain again. Tr. 89, 493; *see also* Tr. 293, 362-63, 470-74, 489.  Plaintiff had lumbar surgery (L5-S1 discectomy) in April 2007.  Tr. 532-33, 552.  Sometime in 2007, Plaintiff

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 2

apparently "popped" his back while vacuuming, which increased his back pain. Tr. 85, 582-83. Plaintiff participated in an outpatient pain clinic in April/May 2008. *See* Tr. 625-32, 834-46. Plaintiff engaged in vocational rehabilitation and earned a degree from the American School of Broadcasting in 2004. Tr. 94, 96. Plaintiff started doing radio work and worked as a music coordinator for local sports teams. Tr. 83.

At the administrative hearing, Plaintiff testified that he can't work due to neck and back pain. Tr. 84. Plaintiff's neck pain extends into his shoulders and arms. Tr. 84-85, 90-91. Plaintiff's back pain extends into his legs, which makes it painful for him to sit. Tr. 85. Plaintiff also claimed to suffer from migraine headaches once or twice a week. Tr. 84, 89. Plaintiff testified that he can sometimes function in spite of a headache, but sometimes the headache is completely debilitating and can last as long as several days. Tr. 84, 89-90.

Plaintiff testified that, on account of his back pain, he needs to spend about ninety percent of his time on the couch. Tr. 84. Plaintiff testified that he has "severe" trouble sitting, laying down, standing, and walking. Tr. 87. Plaintiff testified that he can sit for approximately fifteen minutes, stand for approximately five minutes, and walk for about fifteen yards. Tr. 88. Plaintiff stated he cannot crouch, crawl, or squat, and can only bend at the waist when supporting himself with an arm crutch. Tr. 88. Plaintiff stated he can only lift about five pounds. Tr. 88. Medication makes Plaintiff's pain "bearable," but causes drowsiness. Tr. 91.

Plaintiff testified that he cares for his eleven year old son and prepares meals, but that his son helps with most chores around the house. Tr. 92. Plaintiff testified that he can drive. Tr. 93.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo,

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 3

deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 4

national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On September 3, 2010, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

Preliminary, upon the request of Plaintiff's counsel, the ALJ amended the alleged onset date from January 23, 2002, to January 1, 2006. Tr. 29. The ALJ further found, however, that any amendment to the alleged onset date was irrelevant due to the ALJ's ultimate conclusion that Plaintiff was not disabled. Tr. 29. For purposes of Plaintiff's DIB application, the ALJ found that Plaintiff met the insured requirements through March 31, 2013. Tr. 31.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 23, 2002, the alleged onset date. Tr. 31.

At step two, the ALJ determined Plaintiff had the following severe impairments: lumbar disc disease status post lumbar laminectomy on two occasions, cervical disc degeneration, possible lumbar radiculopathy, headaches, and chronic pain. Tr. 31.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 32. The ALJ found Plaintiff had the residual function capacity (RFC) to perform sedentary work except he requires:

> [A] sit/stand option approximately every 60 minutes. [Plaintiff] can occasionally climb ramps or stairs, stoop, kneel, and crouch, but can never climb ladders, ropes, or scaffolds and can never crawl. Overhead work is limited to occasional with unlimited reaching in all other directions. [Plaintiff] must avoid concentrated or excessive exposure to heavy equipment, heavy vibration and unprotected

heights.  [Plaintiff] also requires the occasional use of an assistive device (cane) for ambulation.

Tr. 33.

At step four, the ALJ found Plaintiff could perform his past relevant work as a disc jockey and announcer.  Tr. 41.  The ALJ thus concluded Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 23, 2002, through the date of the ALJ's decision.  Tr. 41-42.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred (1) by finding Plaintiff lacked credibility regarding the severity of his symptoms, and (2) in evaluating the medical evidence, specifically by failing to give controlling weight to the opinion of Plaintiff's treating physician and by giving greater weight to the testimony of the medical expert.

## DISCUSSION

### A.    Credibility

Plaintiff argues the ALJ erred by finding him less than credible in his symptom reporting.  ECF No. 20 at 5-8.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff not fully credible concerning the intensity, persistence, and limiting effects of his symptoms.  Tr. 34, 37.  The ALJ found Plaintiff's symptom reporting was not entirely credible because (1) Plaintiff was able to work, and was looking for full time work, during his period of alleged disability, (2) Plaintiff could perform activities of daily living (ADL), including taking care of his son, (3) at times, Plaintiff reported that his pain was decreasing or at least manageable, (4) Plaintiff failed to do his home physical therapy exercises and he was discharged from physical therapy because of missed appointments, (5) one examining physician diagnosed Plaintiff with "probable partial malingering," (6) Plaintiff stopped working for reasons other than his disability, and (7) a written summary of a surveillance video tape made by an investigator for the Washington Department of Labor and Industries (L & I) described Plaintiff performing activities that he claimed his impairments prevented him from doing.  Tr. 35-37.

**1. Ability to work and seeking additional work**

The ALJ's first reason for finding Plaintiff less than credible, i.e., that he was able to work part time and that he sought full time employment despite his impairments, Tr. 35-36, is, in part, a specific, clear, and convincing reason to discount Plaintiff's credibility.

The ALJ noted that, over the course of the relevant period, Plaintiff held numerous jobs.  Tr. 35-36 (citing Tr. 93, 658, 1122 (announcer for the Spokane Chiefs, a local hockey team, in at least 2008 and 2010); Tr. 509 (worked "a seven-day-a-week schedule" in September 2006); Tr. 559, 632-34 (worked seasonally for the Spokane Indians, a local baseball team, doing music and "sound effects" in 2007 and 2008); Tr. 94, 96-97 (disc jockey for Citadel Broadcast Company between approximately 2005 and 2007); Tr. 97, 873 (did two sports radio shows for Protective Communications after leaving Citadel Broadcast Company)).  The ALJ did not find that any of these jobs rose to the level of "substantial gainful

activity" in the relevant period.  Tr. 31.  The ALJ also noted that, in at least 2007, Plaintiff was "'looking for full time work.'"  Tr. 35 (citing Tr. 565).

Generally, the fact that a claimant "tried to work for a short period of time and, because of his impairments, *failed*," should not be used to discredit the claimant.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007).  In fact, evidence that a claimant tried to work and failed may support the claimant's allegations of disabling pain.  *Id.* at 1038.  Furthermore, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ partially erred in citing Plaintiff's work activities to discount Plaintiff's credibility.  During the relevant period, Plaintiff worked for several years as a disc jockey for radio companies and for local sports teams.  Although this work seems to have been part time or seasonal, Plaintiff appears to have been able to perform his job duties despite his impairments.  *But see* Tr. 58, 230-31, 296 (jobs with radio companies accommodated Plaintiff's inability to lift and attempted to make some ergonomic changes at his job site).  Plaintiff's ability to perform these jobs would tend to indicate that the severity of his impairments is not as serious as he alleges.  Furthermore, Plaintiff's work at the radio companies ended for reasons other than his impairments, as discussed *infra*.

Regarding Plaintiff's announcer work for the Spokane Indians, however, there is substantial evidence that he had to stop working because he was unable to access the announcer booth via stairs and a steep ramp.  *See*, *e.g.*, Tr. 93.  The fact that Plaintiff's impairments prevented him from continuing his announcer job would tend to support his allegations of disabling pain.  *Lingenfelter*, 504 F.3d at 1038.

Furthermore, the ALJ correctly observed that Plaintiff reported looking for work.  But, more accurately, Plaintiff was looking for "jobs [that would] allow [his] disability."  Tr. 238.  Despite his searching, there is no indication that

Plaintiff ever found work that would accommodate his range of impairments. Plaintiff should not be penalized for attempting to find a job he could perform despite his impairments. *Reddick*, 157 F.3d at 722. And the fact that he was unable to find a job that would accommodate his impairments is consistent with his symptom reporting.

In conclusion, the ALJ partially erred in finding Plaintiff's ability to work was a reason to discount his credibility. Plaintiff's ability to work in radio and play music at local sports events would generally indicate that his symptoms do not preclude work. But, in the case of job as an announcer job for the Spokane Indians, Plaintiff's impairments seemed to have caused him to stop working. Furthermore, the fact that Plaintiff sought, but could not find, additional work that would accommodate his impairments, is not inconsistent with his symptom reporting and not a reason to discount his testimony.

**2. ADL**

The ALJ's second reason for finding Plaintiff less than credible, i.e., Plaintiff's ADL were inconsistent with his alleged impairments, Tr. 35-37, is not a specific, clear, and convincing reason supported by substantial evidence.

"[D]aily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks omitted). A claimant need not be "utterly incapacitated," however, to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ found that Plaintiff engaged in various activities that were inconsistent with his testimony of disabling symptoms. Tr. 35-36 (citing Tr. 565 (independent with self-care tasks); Tr. 627-28, 632 ("Likes to keep busy," cares for his son and six horses, coaches son's hockey team, and walks for exercise); Tr. 238, 242 (cooks for his son, takes son to school, runs errands, looks for work, visits

with friends, takes son to football, baseball, and hockey activities); Tr. 489
(Plaintiff reported "rodeoing, playing sports, and riding horses" in June 2006); Tr.
693 (reported driving son to athletic events in Coeur d'Alene, Idaho)).

Substantial evidence does not support finding Plaintiff's level of activity
inconsistent with his testimony. In some instances, the ALJ mischaracterized the
extent of Plaintiff's daily activities. In other instances, the ALJ failed to account
for the fact that Plaintiff's activities caused him increased pain consistent with his
symptom reporting.

The ALJ cited to a June 24, 2006, report made by Dr. Lim in finding that
Plaintiff engaged in rodeo activities, sports, and horseback riding. Tr. 35 (citing
Tr. 489). But Dr. Lim's report specifically states that, on account of Plaintiff's
injuries, he had to "curtail" these activities. Tr. 489. But substantial evidence in
the record supports that Plaintiff could no longer engage in these activities or do so
only with significant pain. *See*, *e.g.*, Tr. 239 (Plaintiff reporting that he used to be
able to play sports or do activities with his son, but his impairments now prevented
him from taking part in such activities); Tr. 552-53 (back pain "provoked" by
activities such as sports and playing with his son and one of Plaintiff's treatment
goals was to "be able to play with his son without pain . . . *be able to return to
riding horses, [and] play sports.*") (emphasis added); Tr. 557 (Plaintiff "[c]an
engage in few of his usual recreational activities due to increased symptoms."); Tr.
628 (Plaintiff "used to be involved in sports including golf, softball, and rodeo, but
he cannot participate in these activities now").

The ALJ cited to the fact that Plaintiff was able to take care of six horses.
Tr. 36 (citing Tr. 627). But elsewhere in the record Plaintiff reported that he had to
stop taking care of the horses in May 2008. Tr. 687.

The ALJ noted that Plaintiff can drive for relatively long distances. Tr. 36
(citing Tr. 693). But substantial evidence supports that driving generally increases
Plaintiff's pain. *See*, *e.g.*, Tr. 449 ("any activity including . . . driving . . . will

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 10

increase his pain"); Tr. 577 (driving son to rodeo events "caused [his pain] symptoms to increase some"); Tr. 840 (increased pain after "taking a long trip . . . to attend a hockey tournament his son was participating in").

The ALJ noted that Plaintiff took care of, and played with, his son. Tr. 36. The record reflects that Plaintiff is actively involved with his son's sports, but even such things as playing catch or watching his son's events causes him problems. *See*, *e.g.*, Tr. 242 (watching events troublesome because "sitting and getting up is a problem"); Tr. 556 (throwing football aggravates pain).

Substantial evidence does not support the ALJ's conclusion that Plaintiff's ADL are contrary to his symptom reporting. The ALJ cited many activities that Plaintiff reported participating in prior to the onset of his impairments. But there is little evidence that Plaintiff continued to actively engage in these activities since the onset of his impairments. The record substantially reflects that Plaintiff had to stop engaging in these activities altogether or could only engage in them with significant pain. There is little indication that Plaintiff is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting. *Orn*, 495 F.3d at 639. Thus, citing to Plaintiff's ADL was not a specific, clear, and convincing reason to undermine Plaintiff's credibility.

### 3. Reports of decreased pain and being able to manage pain

The ALJ's third reason for finding Plaintiff less than credible, i.e., the fact that Plaintiff reported decreased pain and that his pain was manageable, Tr. 35, is not a specific, clear, and convincing reason.

Generally, the fact that a condition can be remedied by treatment or medication is a legitimate reason for discrediting a claimant's testimony. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). But "some improvement does not mean that the person's impairments no longer seriously affect [the person's] ability to function in a workplace." *Holohan v. Massanari*,

246 F.3d 1195, 1205 (9th Cir. 2001).

The ALJ noted that in September 2007, Plaintiff reported fewer headaches and reduction in pain levels, muscles tightness and tenderness and that in October 2007, Plaintiff reported an eighty percent decrease in his symptoms following physical therapy, with a seventy five to eighty percent decrease in headaches.  Tr. 35, 575, 588.

Substantial evidence does not support that Plaintiff's symptoms substantially improved with treatment.  Although the ALJ correctly noted that Plaintiff, at times, reported improvement, the record as a whole reflects that Plaintiff's complaints of pain are constant, and that treatment has largely failed to alleviate his pain.  *See*, *e.g.*, Tr. 86-89 (Plaintiff testifying that neither cervical nor lumbar surgery improved his back pain); Tr. 489 (after January 2006 car accident, "has been achy, both sharp and dull, knotting, severe pain that is constant"); Tr. 650 (discharged from pain clinic in May 2008 because he could not participate in the program due to being hospitalized for pain); Tr. 657 (increased pain after September 2007); Tr. 665-66 (August 2008 emergency room in which Plaintiff reported worsening back pain); Tr. 682 (October 2008 pain clinic evaluation notes "[Plaintiff] not improving with conservative [treatment].").

Although Plaintiff, at times, reported improvement of his impairments, these appear to be isolated instances.  When viewing the lengthy record as a whole, substantial evidence does not support the ALJ's reasoning that Plaintiff's condition improved, or that his pain decreased, with treatment.  Therefore, this was not a specific, clear, and convincing reason to discount Plaintiff's credibility.

### 4.  Non-compliance with physical therapy

The ALJ's fourth reason for finding Plaintiff less than credible, i.e., that he failed to comply with the requirements of his physical therapy regimen, Tr. 35-36, is a specific, clear, and convincing reason to discount Plaintiff's credibility.

The ALJ may rely on unexplained or inadequately explained failure to seek

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 12

treatment or to follow a prescribed course of treatment.  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

The ALJ correctly noted that Plaintiff reported that he did not always do his home physical therapy exercises and that he was discharged from physical therapy in October 2007 for failing to keep appointments.  Tr. 35-36 (citing Tr. 589, 598).  The fact that Plaintiff did not fully engage in physical therapy in this instance is inconsistent with his reports of disabling pain.

The Court notes, however, that over the course of the relevant period, Plaintiff engaged in "exhaustive" physical therapy.  Tr. 599; *see also* Tr. 304 (noting Plaintiff commenced physical therapy around just prior to February 2002); Tr. 332-34 (Plaintiff participated in physical therapy on a frequent and regular basis between 2002 and 2004).  Plaintiff reported, and multiple medical sources found, that Plaintiff benefited little from physical therapy.  *See* Tr. 313 (Plaintiff stating that physical therapy had "plateaued" and was not helping); Tr. 507 (Dr. Becker noting that Plaintiff participated in physical therapy "without great success"); Tr. 561 (Dr. Bliss noting that Plaintiff gets temporary relief from physical and massage therapy, but "his pain comes back"); Tr. 626 (Plaintiff reporting that none of his treatment since his accident in 2002 had been helpful).

In conclusion, the ALJ did not err in pointing out that Plaintiff did not fully comply with his physical therapy regimen in October 2007.  Thus, this was a specific, clear, and convincing reason to discount Plaintiff's credibility.  *Warre*, 439 F.3d at 1006.

### 5.  Malingering diagnosis

Substantial evidence does not support the ALJ's fifth reason for finding Plaintiff less than credible, i.e., that a physician diagnosed him with potential malingering.  Tr. 36.

The ALJ noted that David B. Bot, Ph.D., diagnosed Plaintiff with "probable partial malingering" based on Plaintiff's "symptom magnification" and refusal to

cooperate with the examination." Tr. 36 (citing Tr. 688-89).

Dr. Bot performed a psychological evaluation of Plaintiff for purposes of Plaintiff's workers' compensation claim in October 2008. Dr. Bot diagnosed Plaintiff with partial malingering based on Plaintiff's inconsistent statements and general uncooperativeness during the evaluation. Tr. 688. Dr. Bot did not appear to use any psychological testing to determine whether Plaintiff was malingering regarding the severity of his symptoms. In fact, other than Dr. Bot's mental status exam, he apparently used no psychological testing to evaluate Plaintiff's mental condition.

Substantial evidence does not support Dr. Bot's malingering diagnosis. To the contrary, substantial evidence in record supports finding that Plaintiff was not malingering throughout the relevant period. *See*, *e.g.*, Tr. 280 (Plaintiff is "forthright"); Tr. 515 ( "[Plaintiff] is motivated . . . [and] highly invested in recovery"); Tr. 575 (Plaintiff is "cooperative and seems dedicated to get back as much function as possible"); Tr. 634 (Plaintiff "demonstrat[ing] valiant effort to continue to participate [in treatment]"); Tr. 834 (Plaintiff "is not making much progress . . . [but] he certainly can't be faulted for not trying"); Tr. 834 (Plaintiff is "determined" and has "good attitude"); Tr. 840 ("good interest and effort in trying new exercises"); Tr. 1122 (noting Plaintiff has "perseverance [and] inner strength . . . [and] appears to be doing his best."); Tr. 1129 (Dr. Balek opining Plaintiff not a malingerer).

In fact, some sources commented that Plaintiff attempted to hide his pain during treatment. *See*, *e.g.*, Tr. 198 (Plaintiff described as "[s]oft-spoken, polite, cooperative . . . [e]ven showed some humor -- said he had to keep positive in order to keep going for himself and his son"); Tr. 518 (Dr. Becker commenting that Plaintiff is "normally extremely stoic" and it was atypically for him to show "obvious discomfort"); Tr. 650 (Plaintiff "was distressed by the pain he experienced during the program . . . although it was clear he was making efforts to

1    maintain a positive presentation").

2        Furthermore, the Court questions Dr. Bot's conclusion that Plaintiff was

3    magnifying his symptoms due to the fact that Plaintiff had difficulty sitting and

4    walking, but was not demonstrably in pain during a medical evaluation.  As the

5    record demonstrates, this behavior is consistent with how Plaintiff reported to his

6    medical providers.  *See*, *e.g.*, Tr. 279-80 (during 2002 emergency room visit,

7    Plaintiff complained of 9/10 pain, but was "appropriate and pleasant throughout

8    [the doctor's] encounter"); Tr. 362 (during 2005 emergency room visit, Plaintiff

9    appeared "in minimal distress" but rated pain "10/10"); Tr. 868-69 (during 2008

10   emergency room visit, Plaintiff reported "10/10 pain," but "on presentation, he

11   [was] sitting and looking uncomfortable, but otherwise in no severe acute

12   distress").  The fact that Plaintiff presented similarly to Dr. Bot would tend to

13   indicate that Plaintiff was not simply putting on an act for Dr. Bot.

14       In conclusion, Dr. Bot's diagnosis of malingering based on a one time

15   evaluation and made without reliance on any objective testing, is contradicted by

16   substantial evidence.  As such, Dr. Bot's malingering diagnosis is not a specific,

17   clear, and convincing reason to discredit Plaintiff.

18   **6.  Other reasons for not working**

19       The ALJ's sixth reason for finding Plaintiff less than credible, i.e., that he

20   stopped working for reasons other than his impairments, Tr. 36-37, is a specific,

21   clear, and convincing reason to discount Plaintiff's credibility.

22       The ALJ noted that Plaintiff "reported that he was laid-off from [work at

23   Citadel Broadcast Company], not because his impairments prevented him from

24   working, but because 'he asked for a raise.'"  Tr. 36 (quoting Tr. 632); *see also* Tr.

25   244 (Plaintiff reported being "let go" after disagreement with management).  The

26   ALJ also cited Dr. Bot's evaluation where Plaintiff stated he was having trouble

27   finding work because the radio business was "a little shaky," highly competitive,

28   and increasingly digital.  Tr. 36 (citing Tr. 693).

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 15

The ALJ did not err in citing the fact that Plaintiff stopped working for the radio companies for reasons other than his impairments. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly relied on the fact that claimant left his job because he was laid off, rather than because he was injured, in finding the claimant not entirely credible).

### 7. Surveillance video

The ALJ's seventh reason for finding Plaintiff less than credible, i.e. that a description of a surveillance video stated that Plaintiff performed activities inconsistent with his alleged abilities, Tr. 35-36, is not a specific, clear, and convincing reason to discount Plaintiff's credibility.

In Social Security cases, the admission of a surveillance video of a claimant does not violate due process when the claimant had an opportunity to view the video prior to the hearing and contest its content at the hearing. *Hubbard v. Barnhart*, 225 Fed. App'x 721, 723 (9th Cir. 2007); *see also Bagoyan Sulakhyan v. Astrue*, 456 Fed. App'x 679, 682 (9th Cir. 2011) (ALJ properly relied on surveillance video to discredit a claimant's testimony that she was in pain all the time and had difficulty moving).

The ALJ noted that in August 2008, an investigator for the Washington Department of Labor and Industries videotaped Plaintiff supervising a yard sale. Tr. 36. The video apparently shows Plaintiff standing "bent over" for sixty to ninety minutes, walking (mostly with a cane), and carrying objects weighing 20-40 pounds. Tr. 36-37 (citing Tr. 705-06).

The Court finds the ALJ's reliance on this description of the surveillance video troubling for several reasons. First, the video itself does not appear to be in the record—only a description of the video written by Drs. Haynes and Harper in their October 2008 evaluation for purposes of Plaintiff's employment benefits. The ALJ did not claim to have seen the video itself. Second, there is no evidence that Plaintiff was ever able to review the video prior to the hearing or contest the

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 16

contents of the video, failure of which might raise due process concerns.  *Hubbard*, 225 Fed. App'x at 723; *Bagoyan Sulakhyan*, 456 Fed. App'x at 682.  Third, even absent due process issues, the doctors' subjective description of the video could just as well support Plaintiff's symptom reporting.  The video apparently showed Plaintiff standing "bent over" and using a walk when walking.  The fact that he at times was able to carry certain objects with one hand (while using his cane in the other) does not necessarily mean he was not disabled.  *See Fair*, 885 F.2d at 603 (claimant need not be "utterly incapacitated" to be eligible for benefits).

Given the video's lack of foundation, the potential due process concerns, and the subjective nature of the video description, the undersigned finds that the ALJ legally erred in relying on the description of the surveillance video to undermine Plaintiff's credibility.

### 8.  Conclusion

Nearly all of the reasons given by the ALJ to support her adverse credibility determination are either based on legal error or not supported by substantial evidence.  Plaintiff's testimony concerning the severity of his symptoms is especially important in a case such as this where Plaintiff is alleging disability from chronic excessive pain.  *See Stewart v. Sullivan*, 881 F.2d 740, 743 (9th Cir. 1989) ("[I]f there are objective medical findings which establish a medical impairment that would normally produce *some* amount of pain, but the claimant testifies that she suffers more pain than would be expected ("excess pain"), the ALJ may discount the testimony only by making specific and justifiable findings to support his decision.").  Given the pervasiveness of the errors, the Court cannot conclude that the errors were harmless.  On remand, the ALJ shall reevaluate Plaintiff's credibility consistent with this opinion.

### B.    Evaluation of medical evidence

Plaintiff argues that the ALJ erred by giving greater weight to the opinions of the testifying medical expert, George W. Weilepp, M.D., and by rejecting the

opinions of Walter Balek, M.D., Plaintiff's treating physician.  ECF No. 20 at 2-4, 8-9.

"In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex. rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830.  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn*, 495 F.3d at 631.  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In this case, multiple physicians, including examining doctors James M. Hayne, M.D., and George R. Harper, M.D., and reviewing physician Norman Staley, M.D., concluded that Plaintiff's impairments would not prevent him from working with certain limitations.  Tr. 400-07, 690-708.  Therefore, the ALJ was only required to give specific and legitimate reasons for rejecting any opinion finding that Plaintiff's impairments preclude him from working.

### a. Dr. Balek

Dr. Balek was Plaintiff's treating doctor between 1998 and 2010.  Tr. 86. Over the course of this period, Dr. Balek treated Plaintiff for back and neck pain

and various other ailments.  *See*, *e.g.*, Tr. 498-99, 506, 512-13, 517, 585, 769-86, 989-1025 1081-94.  Dr. Balek prescribed different combinations of medication, epidural injections, and referred Plaintiff to physical therapists and numerous specialists.

In August 2009, Dr. Balek completed disability paperwork for Plaintiff's application for state benefits.  Tr. 1063-68.  Dr. Balek opined that Plaintiff was capable of sedentary work, but that Plaintiff was unable to bend, lift, or climb and had some limitations walking and standing and would not be able to sit for prolonged periods of time.  Tr. 1063.

In June 2010, Dr. Balek completed a RFC questionnaire in which he opined that Plaintiff's prognosis was "guarded."  Tr. 1128.  Dr. Balek stated that Plaintiff suffers from anxiety and depression.  Tr. 1129.  Dr. Balek opined that Plaintiff could walk less than a block and could sit and stand for fifteen minutes at a time before needing to change positions.  Tr. 1129.  Dr. Balek opined that Plaintiff could sit for about two hours, and stand for less than two hours, in an eight-hour work day.  Tr. 1130.  Dr. Balek assessed numerous other functional limitations regarding Plaintiff's ability to lift, bend, and perform other movements.  Tr. 1130-31.  Dr. Balek opined that Plaintiff would likely miss four days of work a month on account of his impairments.  Tr. 1131.

The ALJ incorporated Dr. Balek's assessments from the 2009 evaluation into her RFC determination.  Tr. 39, 1063-68.  But the ALJ gave little weight to Dr. Balek's 2010 RFC questionnaire.  Tr. 40, 1128-31.  The ALJ reasoned that (1) Dr. Balek provided little explanation as to how he reached his conclusions, and (2) the limitations assessed by Dr. Balek were inconsistent with the treatment record as a whole and inconsistent with his own earlier opinion that Plaintiff was capable of sedentary work.  Tr. 40.

Regarding Dr. Balek's 2009 assessment, Plaintiff does not argue that that it was error to credit Dr. Balek's opinion when formulating Plaintiff's RFC.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 19

Regarding Dr. Balek's answers contained in the June 2010 RFC questionnaire, the ALJ provided specific and legitimate reasons for giving the opinions little weight. An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Even though Dr. Balek treated Plaintiff for over a decade, his treatment notes do not appear to provide clinical findings that would directly support the limitations he assessed in the 2010 RFC questionnaire. Furthermore, inconsistency with the medical evidence can also be a legitimate reason for rejecting a medical opinion. *Batson*, 359 F.3d at 1196. As pointed out by the ALJ, Dr. Balek's answers to the 2010 RFC questionnaire are inconsistent with the medical evidence, including the examination performed by Drs. Haynes and Harper in October 2008, Tr. 690-708, and Dr. Balek's 2009 assessment, Tr. 1063-68, both records which conclude that Plaintiff is capable of sedentary work. The ALJ provided specific and legitimate reasons for giving little weight to Dr. Balek's answers contained in the 2010 RFC questionnaire.

However, the Court determined *supra* that the errors contained in the ALJ's adverse credibility finding require remand for further proceedings. If, on remand, the ALJ credits Plaintiff's subjective complaints, the ALJ may also need to reevaluate Dr. Balek's opinions, including Dr. Balek's treatment notes which seem to support Plaintiff's reporting of excess, chronic pain, and the ineffectiveness of treatment, over the course of many years. Furthermore, Plaintiff seems to be alleging that his condition is deteriorating. As Dr. Balek completed the 2010 RFC questionnaire approximately ten months after his 2009 assessment, it is possible Dr. Balek's 2010 assessment reflects Plaintiff's worsening condition. To determine Plaintiff's current level of functioning, the Court will also require the ALJ to direct Plaintiff to undergo a new consultative physical examination. The ALJ should reevaluate Dr. Balek's answers contained in the 2010 RFC questionnaire in light of the new consultative physical examination.

### b.  George W. Weilepp, M.D.

Dr. Weilepp testified at the hearing as an impartial medical expert.  Dr. Weilepp questioned Plaintiff about his work during the relevant period.  Tr. 57-59. Dr. Weilepp then summarized Plaintiff's medical history, assessed Plaintiff with numerous exertional limitations, and concluded that Plaintiff would be capable of "highly restrictive light/sedentary activity." Tr. 61-63.  Dr. Weilepp opined that pain is "a major problem" for Plaintiff, but that narcotic pain medication reasonably controls Plaintiff's pain because Plaintiff wouldn't take the medication if it didn't help.  Tr. 66.  Dr. Weilepp disagreed with Dr. Balek's findings that Plaintiff was not capable of bending, lifting, or climbing and had some limitations walking and sitting.  Tr. 67-68.  Dr. Weilepp stated that objective evidence did not support these limitations.  Tr. 68.  Dr. Weilepp opined that the fibrosis or scarring surrounding Plaintiff's S1 nerve root could be a cause of Plaintiff's pain.  Tr. 78.

The ALJ gave significant weight to Dr. Weilepp's opinions "due to his medical expertise, his familiarity with the Social Security regulations and the consistency of [his] testimony with the medical history, objective medical findings, and other medical opinions contained in the record." Tr. 40.

Plaintiff argues that Dr. Weilepp failed to take into account Plaintiff's chronic pain in determining Plaintiff's RFC and that Dr. Weilepp's opinion that narcotic pain medication controls Plaintiff's symptoms is unfounded.  ECF No. 20 at 8-9.  After reviewing Dr. Weilepp's testimony, the Court agrees that Dr. Weilepp did not account for the level of impairment caused by chronic pain described by Plaintiff.  The Court concluded *supra* that the ALJ erred in finding Plaintiff's symptom reporting less than credible.  If, on remand, the ALJ credits Plaintiff's subjective reporting, the ALJ will also need to reevaluate the opinions of Dr. Weilepp or elicit additional opinions from an impartial medical expert.  The ALJ should also reconsider the extent to which Plaintiff's pain medication alleviates his symptoms and affects his ability to work.

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAlliser v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to determine Plaintiff's credibility regarding his symptom reporting, especially his testimony concerning the limitations caused by his chronic pain. Upon reevaluating Plaintiff's credibility, the ALJ will also need to supplement the record, reconsider the medical evidence, and, if necessary, determine the disability onset date.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and based, in part, on legal error. On remand, the ALJ shall direct Plaintiff to undergo a new consultative

physical examination.  At the new administrative hearing, the ALJ, if warranted, shall elicit the testimony of a medical expert to assist the ALJ in formulating a new RFC determination.  The ALJ shall present the new RFC assessment to a VE to help determine if Plaintiff is capable of performing any other work existing in sufficient numbers in the national economy.  Furthermore, the Court notes that the ALJ may be acquainted with some of the individuals involved in this matter.  *See* Tr. 272-74.  Even though the ALJ has shown no bias, in an abundance of caution, the Court recommends that the matter be assigned to a different ALJ on remand. *See Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001) (remanding to new ALJ even absent evidence of bias).

Accordingly, **IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED, in part**.

3.      Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED June 5, 2015.



_____

JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE