UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH SCHNEIDERMAN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. 2:14-CV-00120-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT |

**BEFORE THE COURT** is Defendant's Motion to Alter or Amend Judgment Pursuant to FED R. CIV. P. 59(e). ECF No. 24. Attorney Dustin D. Deissner represents Joseph Schneiderman (Plaintiff); Special Assistant United States Attorney Catherine Escobar represents the Commissioner of Social Security (Defendant). Plaintiff has not responded to Defendant's Motion. After reviewing the administrative record and the pending motion, the Court **GRANTS** Defendant's Motion to Alter or Amend Judgment Pursuant to FED R. CIV. P. 59(e).

## BACKGROUND AND STANDARD OF REVIEW

Plaintiff filed for disability insurance benefits and supplemental security income on March 2, 2009. Benefits were denied initially and on reconsideration. After a hearing on June 8, 2010, administrative law judge (ALJ) Marie Palachuk denied benefits and the Appeals Council subsequently denied review. Plaintiff

ORDER GRANTING DEFENDANT'S MOTION
TO AMEND OR ALTER JUDGMENT - 1

filed a civil action in district court to obtain judicial review of the agency's decision. Plaintiff and Defendant filed cross-Motions for Summary Judgment. On June 6, 2015, the Court entered an Order granting in part Plaintiff's Motion for Summary Judgment and remanded the case for additional proceedings. ECF No. 22. Defendant timely filed a Motion to Alter or Amend Judgment on July 6, 2015. ECF No. 24.

Under FED R. CIV. P 59(e), it is appropriate to alter or amend a judgment if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there was an intervening change in controlling law." *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.,* 555 F.3d 772, 780 (9th Cir. 2009) (citing *Zimmerman v. City of Oakland,* 255 F.3d 734, 740 (9th Cir. 2001)).

**ISSUE**

Defendant argues the Court should amend its judgment and affirm the ALJ's decision because the Court clearly erred in rejecting the ALJ's adverse credibility finding. Specifically, Defendant argues that the Court erred "because it acknowledged the ALJ identified valid reasons [for rejecting the ALJ's credibility finding] and because it rejected some reasons merely because substantial evidence supported a different interpretation of the record." ECF No. 24 at 2-3.

**DISCUSSION**

It is generally the province of the ALJ to make credibility determinations, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v.*

*Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

As set forth in the Court's summary judgment Order, the ALJ identified seven reasons for discrediting Plaintiff: (1) Plaintiff was able to work, and was looking for full time work, during his period of alleged disability, (2) Plaintiff could perform activities of daily living (ADL), including taking care of his son, (3) at times, Plaintiff reported that his pain was decreasing or at least manageable, (4) Plaintiff failed to do his home physical therapy exercises and he was discharged from physical therapy because of missed appointments, (5) one examining physician diagnosed Plaintiff with "probable partial malingering," (6) Plaintiff stopped working for reasons other than his disability, and (7) a written summary of a surveillance video tape made by an investigator for the Washington Department of Labor and Industries described Plaintiff performing activities that he claimed his impairments prevented him from doing. ECF No. 22 (citing Tr. 35-37).

The Court found reasons (4) and (6) were specific, clear, and convincing reasons to find Plaintiff less than credible. ECF No. 22 at 12-13, 15-16. The Court found reasons (2), (3), (5), and (7) based on legal error or not supported by substantial evidence. *Id.* at 9-17. The Court found reason (1) was, in part, a clear and convincing reason. *Id.* at 7-9. Defendant argues the Court clearly erred in rejecting the ALJ's reasons (1), (2), (5), and (7).

**A.  Ability to work and seeking work**

Defendant argues that the Court clearly erred in finding that the ALJ partially erred in discounting Plaintiff's credibility on account of Plaintiff working, and seeking work, during his period of alleged disability. ECF No. 24 at 7-9.

The ALJ found Plaintiff less than credible because Plaintiff held numerous jobs over the course of the relevant period. Tr. 35-36 (citing Tr. 93, 658, 1122 (announcer for the Spokane Chiefs, a local hockey team, in at least 2008 and 2010); Tr. 509 (worked "a seven-day-a-week schedule" in September 2006); Tr. 559, 632-34 (worked seasonally for the Spokane Indians, a local baseball team,

doing music and "sound effects" in 2007 and 2008); Tr. 94, 96-97 (disc jockey for Citadel Broadcast Company between approximately 2005 and 2007); Tr. 97, 873 (did two sports radio shows for Protective Communications after leaving Citadel Broadcast Company)).

The Court found this reason partially supported. ECF No. 22 at 7-9. The Court found the ALJ did not err in citing to Plaintiff's disc jockey work for two radio companies or his work for the Spokane Chiefs. *Id.* at 8. The Court found the ALJ erred in using Plaintiff's work for the Spokane Indians as a reason to discredit him. *Id.* The Court found substantial evidence supported Plaintiff's assertion that he had to stop working for the Spokane Indians because his impairments prevented him from accessing the announcer booth. *Id.* The Court further found that the ALJ should not have used the fact that Plaintiff sought additional work to discredit Plaintiff. *Id.* at 8-9. The Court noted that Plaintiff was never able to find a job that would accommodate his impairments. *Id.* at 9.

Defendant argues in the instant Motion for Reconsideration that "[t]he ability to perform full-time work is not consistent with Plaintiff's claimed inability to work due to his impairments." ECF No. 24 at 8 (citing 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A)). The Court partially agreed with this argument: "Plaintiff's ability to perform [his jobs with the radio companies and with the Spokane Chiefs] would tend to indicate that the severity of his impairments is not as serious as he alleges." ECF No. 22 at 8. Defendant does not contest the Court's finding regarding Plaintiff's work for the Spokane Indians.

Defendant also argues that the Court committed clear error by finding the ALJ improperly discredited Plaintiff because Plaintiff sought full time work during his period of alleged disability. ECF No. 24 at 8. Defendant argues that this is clear error because "Plaintiff actually attributed his inability to find work to the increased digitization of his previous employment." *Id.* The Court found that the ALJ's observation that Plaintiff stopped working for reasons other than his alleged

ORDER GRANTING DEFENDANT'S MOTION
TO AMEND OR ALTER JUDGMENT - 4

disability, i.e., increased digitization of the radio industry, was a clear and convincing reason to discount Plaintiff's credibility. ECF No. 22 at 15-16. But the Court disagrees that this reason somehow diminishes Plaintiff's credibility when considering his attempts to find other work. In *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005), the ALJ's adverse credibility determination was based, in part, on the fact that the claimant had sought employment. The Ninth Circuit reversed the ALJ's credibility determination reasoning, in part, that the fact that "[the claimant] sought employment suggests no more than that he was doing his utmost, in spite of his health, to support himself." *Id.* This is essentially the rationale applied by the Court when it reasoned that Plaintiff should not be penalized for attempting to find work. ECF No. 22 at 9 (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Given the Court's holding in *Webb*, the Court disagrees that its finding was clear error, despite the existence of contrary authority. *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (among the specific findings supporting the ALJ's adverse credibility determination was the fact that the claimant had sought employment).

**B.    Activities of Daily Living (ADL)**

Defendant argues that the Court clearly erred in concluding that the ALJ should not have used Plaintiff's ADL to discredit Plaintiff based on the fact that there was no indication the range of activities performed by Plaintiff would transfer to a work setting. ECF No. 24 at 9-11. Defendant argues that inconsistencies between Plaintiff's testimony and his ADL is a reason discredit Plaintiff independent of whether Plaintiff's ADL would be transferrable to a work setting. *Id.* at 9-10. Defendant further argues that the fact that Plaintiff experiences pain while doing activities does not mean the ALJ erred in using Plaintiff's ADL to discredit him. *Id.* at 10-11.

The ALJ found that Plaintiff engaged in various activities that were inconsistent with his testimony of disabling symptoms. Tr. 35-36 (citing Tr. 565

(independent with self-care tasks); Tr. 627-28, 632 ("Likes to keep busy," cares for his son and six horses, coaches son's hockey team, and walks for exercise); Tr. 238, 242 (cooks for his son, takes son to school, runs errands, looks for work, visits with friends, takes son to football, baseball, and hockey activities); Tr. 489 (Plaintiff reported "rodeoing, playing sports, and riding horses" in June 2006); Tr. 693 (reported driving son to athletic events in Coeur d'Alene, Idaho)).

The Court reviewed the evidence underlying the ALJ's reasoning and concluded:

> Substantial evidence does not support the ALJ's conclusion that Plaintiff's ADL are contrary to his symptom reporting. The ALJ cited many activities that Plaintiff reported participating in prior to the onset of his impairments. But there is little evidence that Plaintiff continued to actively engage in these activities since the onset of his impairments. The record substantially reflects that Plaintiff had to stop engaging in these activities altogether or could only engage in them with significant pain. There is little indication that Plaintiff is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting. *Orn* [*v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)]. Thus, citing to Plaintiff's ADL was not a specific, clear, and convincing reason to undermine Plaintiff's credibility.

ECF No. 22 at 11.

Upon reconsideration, the Court finds that it clearly erred by finding the ALJ improperly relied on Plaintiff's ADL to discredit him.

The Court clearly erred when it found the ALJ's reasoning deficient because "[t]here is little indication that Plaintiff is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Id.* (citing *Orn*, 495 F.3d at 639). As argued by Defendant, this is only one of two ways that the ALJ may use a claimant's ADL to discredit the claimant. ECF No. 24 at 9. Contradiction between a claimant's

ORDER GRANTING DEFENDANT'S MOTION
TO AMEND OR ALTER JUDGMENT - 6

symptom reporting and the claimant's ADL is also justification to discredit the plaintiff, regardless if the claimant's ADL are transferrable to a work setting. *See Orn*, 495 F.3d at 639. The Court found that the ALJ mischaracterized the extent of Plaintiff's ADL and cited to evidence in the record that Plaintiff was no longer able to engage in the activities and hobbies used by the ALJ to discredit him. ECF No. 22 at 10. Defendant does not contest the Court's finding that the ALJ mischaracterized the extent of Plaintiff's ADL. Nevertheless, Defendant points out that Plaintiff testified that he spends ninety percent of his time on the couch, he can only sit for fifteen minutes, and stand for five minutes at a time. ECF No. 24 at 9-10 (citing Tr. 84, 88). The relevant period in this case stretches back to 2002. Between 2002 and the date of the ALJ's decision, the ALJ cited to substantial evidence that Plaintiff performed activities that were inconsistent with his testimony at the hearing, even if later in the relevant time period Plaintiff had to reduce his activity level. Given that substantial evidence supports the ALJ's finding, the Court should not have substituted its interpretation of the evidence in place of the ALJ's. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

The Court further clearly erred in finding that the ALJ should have accounted for the fact that Plaintiff experiences significant pain while driving and attending his son's sporting events. "[I]f despite his claims of pain, a claimant is able to perform . . . activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). As argued by Defendant, the mere fact that Plaintiff experiences daily pain does not necessarily mean he is disabled and does not serve as a basis to second guess the ALJ's finding that Plaintiff's ADL contradict his symptom reporting.

C. **Malingering diagnosis**

Defendant argues that the Court clearly erred by finding that the ALJ erred

ORDER GRANTING DEFENDANT'S MOTION
TO AMEND OR ALTER JUDGMENT - 7

by using Dr. Bot's malingering diagnosis to discredit Plaintiff. ECF No. 24 at 3-7.

The ALJ found Plaintiff less than credible because David B. Bot, Ph.D., diagnosed Plaintiff with "probable partial malingering" based on Plaintiff's "symptom magnification" and "refusal to cooperate with the examination." Tr. 36 (citing Tr. 688-89).

The Court determined that substantial evidence did not support Dr. Bot's malingering diagnosis. ECF No. 22 at 13-15. The Court cited points in the record where other medical sources found Plaintiff put forth his best effort. *Id.* at 14. The Court also questioned Dr. Bot's finding that Plaintiff's behavior at the evaluation evidenced symptom magnification, when, at other points in the record, Plaintiff demonstrated similar behavior. *Id.* at 14-15.

Upon reconsideration, the Court agrees with Defendant that its reasoning in this regard constitutes clear error. Although the Court found the weight of the evidence suggested that Plaintiff was not a malingerer, this does refute Dr. Bot's diagnose of probable malingering, a diagnosis which he made drawing on his professional experience. As argued by Defendant, the Court's conclusion to the contrary was "a medical judgment that the Court [was] not qualified to make." ECF No. 24 at 6; *see Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (noting that ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings."). Dr. Bot's observation that Plaintiff failed to cooperate during evaluations is also a reason to discredit Plaintiff. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

**D.    Surveillance video**

Defendant argues that the Court clearly erred in second-guessing the ALJ's reliance on a medical evaluation that contained the evaluating physicians' description of a surveillance video that showed Plaintiff supervising a garage sale. ECF No. 24 at 11-13.

The ALJ noted that in August 2008, an investigator for the Washington

ORDER GRANTING DEFENDANT'S MOTION
TO AMEND OR ALTER JUDGMENT - 8

Department of Labor and Industries videotaped Plaintiff supervising a yard sale. Tr. 36. The video apparently shows Plaintiff standing "bent over" for sixty to ninety minutes, walking (mostly with a cane), and carrying objects weighing 20-40 pounds. Tr. 36-37 (citing Tr. 705-06).

The Court found,

> [T]he ALJ's reliance on this description of the surveillance video troubling for several reasons. First, the video itself does not appear to be in the record—only a description of the video written by Drs. Haynes and Harper in their October 2008 evaluation for purposes of Plaintiff's employment benefits. The ALJ did not claim to have seen the video itself. Second, there is no evidence that Plaintiff was ever able to review the video prior to the hearing or contest the contents of the video, failure of which might raise due process concerns. *Hubbard*, 225 Fed. App'x at 723; *Bagoyan Sulakhyan*, 456 Fed. App'x at 682. Third, even absent due process issues, the doctors' subjective description of the video could just as well support Plaintiff's symptom reporting. The video apparently showed Plaintiff standing "bent over" and using a walk when walking. The fact that he at times was able to carry certain objects with one hand (while using his cane in the other) does not necessarily mean he was not disabled. *See Fair*, 885 F.2d at 603 (claimant need not be "utterly incapacitated" to be eligible for benefits).

ECF No. 22 at 16-17.

Upon reconsideration, the Court finds that it clearly erred in finding the ALJ improperly relied on the description of the surveillance video to discredit Plaintiff. First, the foundational concerns expressed by the Court are not justified as Social Security hearings follow relaxed evidentiary rules; evidence is admissible as long as it is "pertinent." *Richardson v. Perales*, 402 U.S. 389, 400 (1971). The video description is pertinent to Plaintiff's allegations of disability. Second, the Court's due process concerns are also unjustified because the regulatory framework allowed Plaintiff to subpoena the video, but he failed to do so. As argued by Defendant, "A claimant's due process rights are not violated when he does not use

the procedural due process protections afforded him by the regulations." ECF No. 24 at 12 (citing *Richardson*, 402 U.S. at 404-05). Finally, simply because the video description could be interpreted to support Plaintiff's claims, this is not necessarily a reason to reject the video description. As argued by Defendant, Plaintiff has the burden to prove he is disabled and the Court should uphold the ALJ's findings unless the evidence compels a contrary result. ECF No. 24 at 13 (citations and quotation marks omitted). The Court clearly erred in finding fault with the ALJ's reliance on the surveillance video description to discredit Plaintiff.

## CONCLUSION

Upon reconsideration, the Court finds that it clearly erred in rejecting a number of the reasons provided by the ALJ to discredit Plaintiff. Consistent with the above analysis, the Court finds the ALJ's following reasons specific, clear, and convincing reasons for finding Plaintiff less than credible:

1. Plaintiff was able to work for two radio companies and the Spokane Chiefs during his period of alleged disability, despite his allegations of disabling pain;

2. Plaintiff's testimony contradicted his ADL;

3. Plaintiff failed to do his home physical therapy exercises and he was discharged from physical therapy because of missed appointments;

4. Dr. Bot diagnosed Plaintiff with "probable partial malingering" and found that Plaintiff likely exaggerated his symptoms;

5. Plaintiff stopped working for reasons other than his disability; and,

6. A written summary of a surveillance video tape made by an investigator for the Washington Department of Labor and Industries described Plaintiff performing activities that he claimed his impairments prevented him from doing.

The Court finds that the ALJ's adverse credibility determination contains the following errors:

ORDER GRANTING DEFENDANT'S MOTION
TO AMEND OR ALTER JUDGMENT - 10

1.     The ALJ should not have used Plaintiff's work for the Spokane Indians as a reason to discredit Plaintiff as substantial evidence supports that Plaintiff stopped this work because of his impairments;

2.     The ALJ should not have used Plaintiff's attempts to find work as a reason to discredit Plaintiff because Plaintiff should not be penalized for trying his utmost to support himself despite his impairments; and,

3.     The ALJ's finding that Plaintiff reported that his pain was decreasing or at least manageable is not supported by substantial evidence.

The Court must next address whether these errors were harmless. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (applying harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid). An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). As discussed *supra*, the ALJ provided several specific, clear, and convincing reasons for finding Plaintiff less than credible. These reasons are "specific findings related to [Plaintiff's] ability to perform vocational functions, and they clearly demonstrate that to the extent the ALJ found [Plaintiff's] testimony incredible, the ALJ did not do so arbitrarily." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). Given the number of the ALJ's valid reasons for discrediting Plaintiff, the Court finds the ALJ's errors inconsequential to the ultimate nondisability determination and harmless. *See id.* at 1160, 1163 (upholding adverse credibility finding where ALJ provided four reasons to discredit claimant, two of which were invalid).

Furthermore, as noted by Defendant, ECF No. 24 at 13 n.4, the Court's remand instructions concerning the need to reevaluate the opinions of Drs. Walter Balek and George Weilepp are premised on the conclusion that the ALJ should credit Plaintiff's subjective complaints. *See* ECF No. 22 at 20-21. As the Court

ORDER GRANTING DEFENDANT'S MOTION
TO AMEND OR ALTER JUDGMENT - 11

now affirms the ALJ's adverse credibility determination, there is no need to reevaluate these medical opinions.

Having reviewed the record, Defendant's Motion, and the ALJ's findings, the Court finds it clearly erred in reversing the ALJ's decision and remanding for further proceedings. Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion to Alter or Amend Judgment Pursuant to FED R. CIV. P. 59(e), **ECF No. 24**, is **GRANTED**.

2. The Court's Order Granting In Part Plaintiff's Motion for Summary Judgment dated June 5, 2015, **(ECF No. 22)** is **AMENDED** to the extent it is inconsistent with this decision, including (1) Defendant's Motion for Summary Judgment **(ECF No. 21)** is **GRANTED;** and (2) Plaintiff's Motion for Summary Judgment **(ECF No. 20)** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. An **Amended** Judgment shall be entered for **Defendant** and the file shall be **CLOSED**.

DATED August 3, 2015.



_____
                    JOHN T. RODGERS
              UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION
TO AMEND OR ALTER JUDGMENT - 12